**Anne Braun EVELAND, Plaintiff,**

v.

**STAR BANK, NA, et al., Defendants.**

**No. C–1–94–870.**

United States District Court,
S.D. Ohio,
Western Division.

June 19, 1997.

Thomas F. Payne, Montgomery, OH, for Plaintiff.

Timothy C. Sullivan, Cincinnati, OH, for Defendants.

## MEMORANDUM AND ORDER

BECKWITH, District Judge.

This matter is before the Court upon Defendant Star Bank's and Plaintiff's cross-motions for partial summary judgment (Doc. 111 and Doc. 114). The disposition of those two motions requires the Court to consider the interplay among Plaintiff's claims and Star Bank's counterclaims. Accordingly, a thorough recounting of the events leading to this Memorandum and Order follows.

### A. Background

Plaintiff married George D. Eveland, Sr., in February 1992. Shortly before the marriage, Mr. Eveland, Sr., transferred most of his assets to an *inter vivos* trust. Star Bank was the trustee, and George Eveland, Jr., and Thomas Eveland, Mr. Eveland's sons, were the trust beneficiaries.

At the time of his marriage to Plaintiff, Mr. Eveland, Sr., owned and resided in a house in Terrace Park, Ohio. With the proceeds from the sale of that house, Mr. Eveland, Sr., and Plaintiff purchased a house at 11920 Snider Road in Cincinnati on June 19, 1992. Within months after the purchase of that house, Mr. Eveland, Sr., took out short-term loans totalling $340,000 from Star Bank. Those loans were secured by assets in the *inter vivos* trust. Plaintiff was not obligated in any manner with respect to those loans and had no interest in the property offered as security for the loans.

In early 1993, Mr. Eveland, Sr., applied to Star Bank for a loan, to be secured by a mortgage on the Snider Road property, to repay the short-term loans, which had become due. The parties agree that Plaintiff was not an applicant for the loan, was not a party to any agreement between Mr. Eveland, Sr., and Star Bank, and was not included as a signatory on the promissory note prepared by Star Bank.

The parties agree that for some significant period of time prior to March 24, 1993, David Todd had represented Mr. Eveland, Sr., as legal counsel. Mr. Todd's law firm also represented Star Bank in various matters.

On or before March 24, 1993, Star Bank delivered to Mr. Todd the documents that it had prepared related to the loan of $380,000 to Mr. Eveland, Sr. At that time, Plaintiff was not included as a signatory on the promissory note because she was not a party to the agreement between Mr. Eveland, Sr., and Star Bank giving rise to the promissory note. Mr. Todd added Plaintiff's name to a previously blank signature line on the document, however. Mr. Todd has stated that he had added Plaintiff's name to the promissory note at the direction of Mr. Eveland, Sr. Mr. Todd and Star Bank agree that Plaintiff's name was not added to the promissory note at Star Bank's direction.

On March 24, 1993, Plaintiff and Mr. Eveland, Sr., went to the home of Mr. Todd's mother to meet with Mr. Todd. There, Plaintiff admits, she signed a number of documents. Plaintiff contends that she did not know what the documents were and that her husband had only told her that her signature was necessary as a formality. Plaintiff further contends that Mr. Todd did not permit her to look at the documents when she signed them but that he fanned them out before her in such a manner that only the signature lines were displayed. Finally, Plaintiff contends that Mr. Todd and Star Bank did not provide her the two copies of her notice of right to rescind the mortgage required by 15 U.S.C. § 1635(a). At his deposition in this matter, Mr. Todd testified that he provided two copies of the notice to Plaintiff, as required by 12 C.F.R. § 226.23(b)(1).

Plaintiff was not, apparently, a beneficiary under the will that her husband had executed prior to November 1993. Plaintiff contends that, in November 1993, Mr. Eveland, Sr., executed a codicil to that will pursuant to which he instructed the executor to "pay off and fully discharge the existing mortgage indebtedness on the real estate located at 11920 Snider Road, Cincinnati, Ohio 45249; it being [his] specific intent that [his] wife, Anne Braun Eveland own the property with no debts on it after [his] death."

Mr. Eveland, Sr., died on November 22, 1993. A will contest action in the Probate Division of the Court of Common Pleas of

Hamilton County, Ohio, ensued. One or both of Plaintiff's late husband's sons contested the validity of the codicil quoted above. In the meantime, Star Bank began to communicate with Plaintiff concerning the indebtedness on her residence. Star Bank asked Plaintiff to make payments on the note. Plaintiff made only a few payments, however, and the outstanding principal and interest under the promissory note as of June 1, 1997, is $448,379.27. On September 30, 1994, the parties to the will contest action, including Plaintiff, executed a settlement agreement pursuant to which Plaintiff received $210,000, agreed to withdraw the codicil from probate, and agreed to take the residence "subject to the outstanding mortgage indebtedness."

Plaintiff filed the original complaint in this action on December 28, 1994. She alleged that Defendant Star Bank had violated 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b)(1). On the basis of that claim, Plaintiff sought to rescind the mortgage on the Snider Road property. Plaintiff subsequently amended the complaint to add a claim for a declaration of the parties' rights and obligations under the March 24, 1993 promissory note.

Star Bank has asserted two counterclaims against Plaintiff. First, Star Bank contends that Plaintiff has breached the settlement agreement among the parties to the will contest action by failing to pay off the indebtedness on the March 24, 1993 promissory note. Star Bank contends that Plaintiff's agreement to take the Snider Road property "subject to the outstanding mortgage indebtedness" was an agreement to assume the obligation to pay off the indebtedness. Star Bank asserts that it is entitled to enforce that obligation under various legal theories. Pursuant to its second counterclaim, Star Bank seeks to foreclose on the mortgage.

Plaintiff and Star Bank now seek summary judgment with respect to Star Bank's counterclaim for foreclosure of the mortgage on the Snider Road property. The arguments raised by the parties in support of their respective motions encompass all of the claims raised by both parties, and the Court will analyze each of those claims in its consideration of the instant motions.

## B. The *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 490, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service*

*Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. at 2552; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

## C. *Plaintiff's Right to Rescind the Loan Transaction*

Star Bank does not contend that Plaintiff is indebted to Star Bank by virtue of the March 24, 1993 promissory note. She was not a party to any agreement with Star Bank. In the absence of an agreement with Star Bank to repay the indebtedness arising from the promissory note, Plaintiff is not obligated by virtue of that note, in spite of the actions of David Todd and Plaintiff's apparent signature on that document.

Star Bank contends, however, that it may foreclose on the mortgage, to which Plaintiff was a signatory, inasmuch as the underlying obligation is in default and the mortgage was offered as security for the repayment of that obligation. In response to Star Bank's argument, Plaintiff contends that she is entitled to rescind the mortgage, inasmuch as Star Bank failed to provide her two copies of the notice of her right to rescind required by 15 U.S.C. § 1635(a). As a result of that failure, Plaintiff contends that she has rescinded the mortgage and that Star Bank is obligated by law to cancel the mortgage.

Star Bank contends that Plaintiff was given the notice required by law and that, accordingly, she is not entitled to rescind the mortgage. Star Bank further contends that, even were Plaintiff entitled to rescind the mortgage, she cannot rescind without returning the proceeds of the March 24, 1993 loan to Star Bank. Star Bank also argues that Plaintiff is equitably estopped from denying that she is obligated to repay the indebtedness arising from the March 24, 1993 promissory note and that she has assumed and ratified the note.

The statute is question, 15 U.S.C. § 1635, provides, in pertinent part, as follows:

(a) Disclosure of obligor's right to rescind
  Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or

increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor . . . of his intention to do so.

\* \* \*

(b) Return of money or property following rescission

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

\* \* \*

(c) Rebuttable presumption of delivery of required disclosures

Notwithstanding any rule of evidence, written acknowledgement of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

Regulations promulgated pursuant to 15 U.S.C. § 1635 and codified at 12 C.F.R. § 226.23 provide, in pertinent part, as follows:

(a) **Consumer's right to rescind.** (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction. . . .

\* \* \*

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon the sale of the property, whichever occurs first.

\* \* \*

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) (1) **Notice of right to rescind.** In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction. . . .

(c) **Delay of creditor's performance.** Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably

satisfied that the consumer has not rescinded.

(d) **Effects of rescission.** (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including the finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.

■ The filing of a complaint in this Court constitutes statutory notice of rescission pursuant to 12 C.F.R. § 226.23(a)(3). *Taylor v. Domestic Remodeling, Inc.,* 97 F.3d 96, 100 (5th Cir.1996). Plaintiff filed her original complaint in this action in December 1994, well within the three year period prescribed by the regulation. Accordingly, to the extent that Plaintiff can prove that Star Bank did not provide the notice required by 15 U.S.C. § 1635(a), Plaintiff is entitled to rescind the transaction giving rise to the mortgage on the Snider Road property.

■ The Court concludes, however, that a genuine issue of material fact exists concerning Plaintiff's receipt of the notice of her right to rescind. Star Bank does not contest Plaintiff's assertion that she was entitled to notice, separate from the notice given to her late husband and in conformity with 12 C.F.R. § 226.23. Star Bank contends, however, and has offered David Todd's deposition testimony to prove, that it provided two copies of the requisite notice to Plaintiff. Mr. Todd's testimony is directly contradicted by Plaintiff's own statement that she did not

receive the notice of her right to rescind the transaction until after she initiated this litigation.

Star Bank contends that it is entitled to summary judgment, in spite of the existence of a genuine issue as to Plaintiff's receipt of the notice required by 15 U.S.C. § 1635. Star Bank contends that Plaintiff may not rescind the March 24, 1993 transaction, inasmuch as she is not prepared to return the proceeds of the loan to Star Bank.

The case law interpreting 15 U.S.C. § 1635 is devoid of applications of that statute to the facts presented in this action. Here, Plaintiff is not an obligor in the loan transaction giving rise to the mortgage. Star Bank did not deliver money or property to Plaintiff. While Star Bank argues that Plaintiff enjoyed the benefits of Star Bank's loan to her late husband, that fact does not bear upon the legal analysis. Star Bank cannot seriously contend that Plaintiff became obligated under the promissory note by virtue of benefits conferred upon her entirely by her late husband.

The regulations promulgated pursuant to 15 U.S.C. § 1635 do not explicitly address the issues arising from the peculiar facts presented in this action. Plaintiff is clearly afforded a right to rescind the March 24, 1993 transaction by virtue of 12 C.F.R. § 226.23(a). A credit transaction occurred and a security interest was acquired in Plaintiff's principal dwelling. Accordingly, she has or had the right to rescind the transaction. 12 C.F.R. § 226.23(a)(1).

Plaintiff's late husband was also a consumer in whose principal dwelling a security interest was acquired by Star Bank by virtue of the March 24, 1993 transaction. Accordingly, Star Bank acquired a security interest in the principal dwelling of two consumers.

Plaintiff's timely exercise of her right to rescind would be "effective as to all consumers," in this case, Plaintiff and her late husband. Accordingly, Plaintiff's timely exercise of that right would effectively rescind the transaction as to her late husband.

As the Court has previously observed, a genuine issue of material fact exists concern-

ing whether Plaintiff has timely exercised her right to rescind the March 24, 1993 transaction. If Star Bank failed to provide Plaintiff two copies of the notice of the right to rescind required by 15 U.S.C. § 1635(a), as Plaintiff contends, her exercise of the right to rescind in December 1994 by initiating this action was timely and effective to rescind the transaction as to herself and her late husband. If she received two copies of the notice in a timely fashion, as David Todd and Star Bank contend, her exercise of the right in December 1994 was not timely, the transaction has not been rescinded, and Star Bank may foreclose upon the mortgage on the Snider Road property.

■ Assuming for the present that Plaintiff's version of the facts is correct and that she timely exercised her right to rescind in December 1994, the Court concludes that Star Bank would be required to terminate its security interest in the Snider Road property. *See* 12 C.F.R. § 226.23(d)(2). The creditor is required, upon a timely exercise of the right to rescind, to "take any action necessary to reflect the termination of the security interest." *Id.* That requirement precedes the consumer's obligation to return to the creditor any money or property received from the creditor. *See* 12 C.F.R. § 226.23(d)(3). Accordingly, Star Bank's contention that it is excused from the obligation to terminate the security interest by virtue of Plaintiff's failure to tender the proceeds of the March 24, 1993 loan is meritless.

Star Bank's contention may lack merit for a second reason. The parties agree that none of the loan proceeds were delivered to Plaintiff. Plaintiff's late husband was the obligor on the promissory note. The loan proceeds were delivered to him and used by him to repay the earlier short-term loans, which were secured by an interest in certain assets held in the *inter vivos* trust of which Star Bank was the trustee.

As the Court has noted, the regulations promulgated pursuant to 15 U.S.C. § 1635 provide that the timely exercise of the right to rescind a transaction by one consumer is effective as to all consumers. The obligation to tender the proceeds of the loan following termination of the security interest by the creditor falls upon "the consumer." *See* 12 C.F.R. § 226.23(d)(3). The regulation does not specify which consumer in a transaction like the March 24, 1993 transaction bears the obligation to return the proceeds, nor has case law resolved the issue. A logical reading of the regulation, however, suggests that the obligation to return the proceeds falls upon the consumer to whom the proceeds were delivered.

The regulation provides that, when a right to rescind attends a transaction, "no money shall be disbursed other than in escrow ... until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded." 12 C.F.R. § 226.23(c). If a creditor provides the requisite notice and complies with the 12 C.F.R. § 226.23(c), the right to rescind will be exercised, if ever, prior to the delivery of loan proceeds. The creditor may simply retrieve the proceeds of the loan from escrow upon the consumer's exercise of the right to rescind.

When the creditor fails to provide the requisite notice, however, or delivers the proceeds of the loan before the expiration of the rescission period, the burden logically falls upon the consumer to whom the loan proceeds were delivered to return the proceeds to the creditor. That result obtains because the exercise of the right to rescind by one consumer is "effective as to all consumers." 12 C.F.R. § 226.23(a)(4).

The result of that construction of the regulation is that the creditor bears the risk of loss resulting from its failure to comply with the regulation. The creditor will not be placed in the position of attempting to reclaim the proceeds of a loan from a consumer after a consumer has exercised the right to rescind unless the creditor fails to comply with the regulation requiring that the proceeds not be delivered to the consumer until after the expiration of the rescission period. If the creditor complies, no loan proceeds will have been delivered to the consumer until after the expiration of the rescission period.

■ When the creditor fails to comply with the regulation in the manner alleged by Plaintiff in this action, the burden of retriev-

ing the loan proceeds from the consumer to whom they were delivered, in contravention of 12 C.F.R. § 226.23(c), should fall upon the creditor who failed to comply rather than upon a consumer to whom no proceeds were delivered. Accordingly, the Court concludes that, if Plaintiff succeeds in establishing that Star Bank did not provide the notice of her right to rescind required by 15 U.S.C. § 1635, she has rescinded the March 24, 1993 transaction, Star Bank is required to terminate its security interest in the Snider Road property, and Star Bank must look to the consumer to whom the loan proceeds were delivered for the return of those proceeds. Because Mr. Eveland, Sr., was the consumer to whom Star Bank delivered the loan proceeds, Star Bank would be required to look to his estate for the return of the loan proceeds.

That construction of the statute and the regulation is consistent with the theme, if not the desired result, of Star Bank's argument in support of its motion for summary judgment. There, Star Bank argues that the procedure for rescission was to return the parties to the *status quo ante* the transaction. In this case, the *status quo ante* was that Plaintiff was not legally obligated to Star Bank, while her late husband was. To return all parties to the *status quo ante,* then, would require the estate to tender the proceeds to Star Bank. Plaintiff would be returned to her position of not being obligated to Star Bank. She would retain the Snider Road property by virtue of her survivorship interest, which she obtained when the property was purchased and not as a result of any transaction with Star Bank.

### D. *Star Bank's Rights under the Settlement Agreement*

Plaintiff also seeks summary judgment with respect to Star Bank's contention that it is entitled to enforce the settlement agreement executed by the parties to the will contest action in the Hamilton County Court of Common Pleas Probate Division. Star Bank concedes that it was not a party to that agreement, pursuant to which Plaintiff agreed to take the Snider Road property "subject to the outstanding mortgage indebt-

edness" and to accept $210,000 from the estate.

Star Bank's argument is based upon various legal theories, including a theory that Star Bank is a third party beneficiary to the settlement agreement and that, as a beneficiary, it may enforce Plaintiff's obligations under the settlement agreement. Plaintiff seeks summary judgment with respect to that theory but not with respect to the other theories pursuant to which Star Bank claims to be entitled to enforce Plaintiff's alleged obligation under the settlement agreement: assumption of the loan, ratification of the loan, and judicial estoppel.

Star Bank's argument rests, in part, upon its contention that by taking the Snider Road property "subject to the outstanding mortgage indebtedness" Plaintiff agreed to pay off the indebtedness arising from the March 24, 1993 promissory note. Star Bank has offered testimony from a November 21, 1996 hearing before the Probate Division that suggests that the estate of Mr. Eveland, Sr., would not have paid Plaintiff $210,000 had it not believed that she would pay off the indebtedness to Star Bank under the March 24, 1993 promissory note. The excerpt of that hearing attached to Star Bank's memorandum does not identify the witness who made the assertion. Nevertheless, the Court assumes that Star Bank can adduce evidence that the estate's intention in entering into the settlement agreement with Plaintiff was to shift the obligation for the repayment of the March 24, 1993 loan to Plaintiff.

The parties disagree as the to import of the language, "subject to the outstanding mortgage indebtedness," contained in the settlement agreement. Plaintiff contends that the language does not signify that she has agreed to repay the loan but that she accepted the property with the knowledge and under the condition that the indebtedness existed. Star Bank contends that the language represents Plaintiff's agreement to repay the note.

■ Case law suggests that when a party takes property subject to a mortgage, that party does not assume the mortgage. *See, e.g., Knowlton Realty Co. v. Darke County*

*Board of Revision,* 77 Ohio St.3d 438, 440, 674 N.E.2d 1374 (1997); *Ryan v. Buckeye State Building & Loan Co.,* 29 Ohio App. 476, 479, 163 N.E. 719 (Clermont Cty.1928). Star Bank makes much of the fact that the case law arises from transactions in which a party takes property subject to a mortgage rather than subject to mortgage indebtedness, as Plaintiff did in this instance. Star Bank offers no legal support for a distinction, however, and the Court concludes that, by taking the Snider Road property "subject to the outstanding mortgage indebtedness," Plaintiff did not assume the obligation to repay the loan as a matter of law.

Star Bank contends that Plaintiff did assume the indebtedness, however, regardless of the import of the language in the settlement agreement. That claim is not based upon the language of the settlement agreement but upon the intentions of the parties to that agreement. Plaintiff has sought summary judgment based solely upon the language of the settlement agreement. The Court concludes that it may not appropriately address Star Bank's claims based upon the intentions of the parties and upon its asserted status as a third party beneficiary because the parties have not presented whatever evidence they may have in support of their positions with respect to those claims.

E. *Conclusion*

For the foregoing reasons, Star Bank's motion for partial summary judgment (Doc. 111) is hereby **DENIED.** Plaintiff's motion for partial summary judgment (Doc. 114) is also hereby **DENIED.** Plaintiff's motion for leave to file surreply *instanter* is **DENIED** as surplusage in light of the Court's decision set forth herein. The Court **DIRECTS** Plaintiff to submit a memorandum in support of summary judgment on Star Bank's claims of assumption of the loan, ratification of the loan, and estoppel, together with supporting evidence, on or before July 18, 1997. Star Bank may submit a memorandum in opposition on or before August 15, 1997. Plaintiff may submit a reply memorandum on or before August 29, 1997.

IT IS SO ORDERED.